Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
24654 N. Lake Pleasant Pkwy.
Suite 103-467
Peoria, AZ 85383

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Ashley Hood*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ashley Hood, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Life Insurance Company of North America; Darden Restaurants, Inc.; Darden Restaurants Group Life and Health Plan for Salaried Employees, | |
| Defendants. | |

Plaintiff, Ashley Hood (hereinafter referred to as "Ms. Hood"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. § 1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      At all times relevant to this action, Ms. Hood was a resident of Pima County, Arizona.

3.      Upon information and belief, Defendant Darden Restaurants, Inc., a Florida corporation (hereinafter referred to as the "Company"), sponsored, administered and purchased a group life insurance Policy (hereinafter referred to as the "Policy"), which was issued to the Company in the State of Florida, and the Policy is fully insured by Defendant Life Insurance Company of North America (hereinafter referred to as "LINA").

4.      The specific LINA group life insurance Policy is known as Group Policy No. FLX-980187 (*See* Exhibit "A").  The Company's purpose in purchasing the Policy was to provide life insurance coverage and welfare benefits for its employees.

5.      Through the group life insurance Policy, Ms. Hood was afforded life insurance coverage for herself and her family/dependents, and the Policy contained a feature which waived any premiums that may have been due on the Policy (hereinafter referred to as the "Life Insurance Waiver of Premium benefit") if Ms. Hood was found to meet the definition of "Disabled" in the Policy, as is more specifically pled and explained in detail *infra.*

6.      Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Darden Restaurants Group Life and Health Plan for Salaried Employees (hereinafter referred to as the "Plan"). The Plan may have been created to provide the Company's employees with welfare benefits.

7.      At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8.     Upon information and belief, LINA functioned as the claim administrator of the Plan and Policy.

9.     Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

10.    LINA operated under a structural financial conflict of interest because it fully insured the Policy and administered Ms. Hood's claim for the Life Insurance Waiver of Premium benefit.

11.    In administering Ms. Hood's claim, LINA operated under dual and conflicting roles as the decision maker with regard to whether Ms. Hood was disabled, and also as the provider/payor of life insurance benefits if it found she was disabled pursuant to the definition of disability as set forth in the Policy.

12.    LINA's financial conflict of interest existed and manifested because if it found Ms. Hood was disabled, it was then financially liable to provide life insurance coverage for Ms. Hood and her family/dependents and to pay any claims that may be made, while also waiving any premiums due on the Policy.

13.    The Company, LINA and the Plan conduct business within Pima County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

14.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

15.    Incident to her employment, Ms. Hood was a covered employee pursuant to the Plan and the relevant Policy, and a "participant" as defined in 29 U.S.C. § 1002(7).

16.    In this action, Ms. Hood seeks the reinstatement and continuation of the group life insurance coverage for herself and her family/dependents, as well as the Life Insurance

Waiver of Premium benefit from the Plan and the relevant Policy pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

17.     In this action, Ms. Hood also seeks any other employee benefits she may be entitled to from the Plan and/or from the Company as a result of being found disabled in this action.

18.     After being a loyal employee and working for the Company in the occupation of an Assistant Restaurant Manager, Ms. Hood became disabled from working in that occupation and also disabled from working in any occupation on or about October 20, 2017.

19.     Due to her disabling medical conditions, Ms. Hood has remained continuously disabled from working in any occupation since October 20, 2017.

20.     Following the onset of her disability, Ms. Hood filed a claim for the Life Insurance Waiver of Premium benefit under the relevant Policy, which was entirely administered and funded by LINA.

21.     LINA made every decision regarding whether Ms. Hood met the definition of disability as that term is defined in the relevant Policy.

22.     Upon information and belief, the relevant Policy's definition of disability governing Ms. Hood's Life Insurance Waiver of Premium claim is as follows:

> "…you are disabled if because of Injury or Sickness you are unable to perform all of your material duties of your Regular Occupation.  After 30 months, you are considered disabled if because of injury or sickness you are unable to perform all of the material duties of any occupation for which you are reasonably qualified based on education, training or experience."

23.     Ms. Hood also filed a claim for long-term disability benefits made under a group long-term disability Policy that was issued, fully insured and administered by LINA.

24.     LINA approved Ms. Hood's long-term disability claim and has paid her long-term disability benefits from January 18, 2018 through the present date.

25.     Ms. Hood asserts that LINA's approval and continued payment of her long-term disability claim is relevant evidence for this Court to consider with regard to whether she is unable to work in any occupation as well as the unreasonableness of LINA's termination of her Life Insurance Waiver of Premium benefit. The approval of Ms. Hood's long-term disability claim is evidence that its termination of her Life Insurance Waiver of Premium benefit was influenced by LINA's financial conflict of interest and desire to save money by providing life insurance coverage and not waiving Ms. Hood's life insurance premium.

26.     In support of her Life Insurance Waiver of Premium claim, Ms. Hood submitted to LINA, medical and other reliable, compelling evidence that supported her allegation that she met (and continues to meet) the aforementioned definition of Disabled as defined in the relevant Policy.

27.     LINA initially approved Ms. Hood's claim for the Life Insurance Waiver of Premium benefit and reinstated her group life insurance coverage from October 20, 2017 through April 19, 2020, when LINA terminated Ms. Hood's claim and benefit after erroneously finding that she no longer met the definition of disability.

28.     In a letter dated December 28, 2019, LINA informed Ms. Hood that it was terminating her Life Insurance Waiver of Premium claim/benefit beyond April 19, 2020 after concluding that, "…we find the available physical information does not support an inability to perform any occupation."

29.     Pursuant to 29 U.S.C. § 1133, Ms. Hood timely appealed LINA's December 28, 2019 termination of her Life Insurance Waiver of Premium claim/benefit on June 12, 2020.

30.     In support of her Life Insurance Waiver of Premium claim and appeal of the termination of her benefits, Ms. Hood submitted to LINA a narrative letter dated November

6, 2020 from her treating family practice physician of over four (4) years, who confirmed it is his opinion, "[Ms. Hood] has been unable to work in any job since October of 2017."

31.     Ms. Hood's same treating physician confirmed in an updated narrative letter dated April 27, 2021 that it is his medical opinion, "[Ms. Hood] remains unable to work in any occupation due to her disabling physical medical conditions."

32.     In support of her claim and appeal, Ms. Hood also submitted to LINA a July 16, 2020 Independent Medical Examination report from a rheumatologist who initially examined her in September of 2018, and concluded she was unable to work in any occupation at that time.  After personally examining Ms. Hood for a second time and reviewing relevant medical records and evidence on July 16, 2020, the rheumatologist opined that, "…[Ms. Hood's] medical condition has deteriorated since September 2018…In my opinion, she continues to meet [LINA's] any occupation definition of disability and will indefinitely."

33.     Ms. Hood also submitted to LINA an April 21, 2021 addendum from the same rheumatologist who after conducting an evaluation of her on February 16, 2021 and reviewing Ms. Hood's updated medical records confirmed that, "…[Ms. Hood] continues to experience significant fatigue and ongoing joint pain…"

34.     Ms. Hood also submitted a Functional Capacity Evaluation report dated April 1, 2020, authored by a qualified physical therapist who had initially evaluated her in July 2018, and concluded that she was unable to work in any occupation at that time.  After this second, extensive three-hour clinical interview, physical examination and simulated objective workplace testing on March 4, 2020, which produced ***valid test results***, the qualified physical therapist concluded, "…[Ms. Hood] is UNABLE to perform the physical demands or material duties of her past work as an Assistant Restaurant Manager or any other work including all types of SEDENTARY physical demand work on a regular and consistent basis" (original emphasis).

35.     Ms. Hood also submitted to LINA an October 28, 2020 addendum letter from the same physical therapist who concluded, "…it should be noted that in general, many of [Ms. Hood's] disabling diagnoses have not improved since my initial evaluation in 2018."

36.     Further supporting her claim, Ms. Hood submitted a Vocational Assessment (evaluation) dated April 28, 2021 from a certified vocational expert who initially interviewed her and concluded that she was unable to work in any occupation in September 2018.  After personally interviewing Ms. Hood again and reviewing the updated relevant evidence in Ms. Hood's claim, along with the definition of "Disabled" set forth in the Policy, he concluded that, "…it remains my professional opinion, to a reasonable degree of vocational probability, that [Ms. Hood] is totally disabled and unable to work in any occupation from a physical and cognitive perspective due to her severe and chronic medical conditions."

37.     Ms. Hood also submitted her January 15, 2021 sworn affidavit wherein she confirmed that she remains unable to work in any occupation and that her disabling medical conditions have not improved in any manner that would allow her to return to any work since she last worked on October 20, 2017.

38.     Ms. Hood also submitted a January 15, 2021 sworn affidavit from her husband, who also confirmed she is unable to engage in any work/occupation and that her disabling medical conditions have not improved in any meaningful way that would allow her to return to any work since the date she originally became disabled as set forth herein.

39.     Ms. Hood also submitted updated medical records from her treating medical professionals which confirmed that she remained disabled as the term is defined in the Policy, and that her disabling medical conditions have not improved in a manner that would allow her to return to any work since she became disabled.

40.     Ms. Hood also submitted a list of her current medications, along with the adverse side effects/limitations they create for her and the reasons those side effects preclude her from being able to work in any occupation.

-7-

41.    All of the reliable evidence Ms. Hood submitted to LINA consistently proves that she is unable to work in *any occupation* and she continues to meet the definition of disability as set forth in the Policy.

42.    Per LINA's instruction and requirement in its January 9, 2018 letter (*See* Exhibit "B"), Ms. Hood applied for Social Security disability benefits from the Social Security Administration (hereinafter referred to as the "SSA").

43.    LINA informed Ms. Hood in its January 9, 2018 letter that if she did not file a claim for Social Security disability benefits, it could reduce her long-term disability benefit amount (and its liability to her) by an estimate of what her Social Security disability benefit amount may be.

44.    LINA's requirement that Ms. Hood file a claim for Social Security disability benefits when it knew she needed to be unable to work in any occupation as found by the SSA to qualify for this benefit proves that LINA believed Ms. Hood actually met SSA's definition of disability and that she was unable to work in any occupation that may exist within the national economy.

45.    The fact that LINA believed Ms. Hood was disabled and unable to work in any occupation and therefore, entitled to Social Security disability benefits is documented by LINA's statement in its January 9, 2018 letter that if Ms. Hood did not apply for Social Security disability benefits it would begin reducing her long-term disability benefit by the estimated amount of her monthly Social Security disability benefit.

46.    On October 2, 2019, the SSA and an Administrative Law Judge (hereinafter referred to as the "ALJ") held a hearing in Ms. Hood's claim.  Ms. Hood appeared at the SSA hearing before the Judge and testified about her disabling medical conditions, as well as the resulting functional limitations she experiences which preclude her from working in any occupation.

47.     After conducting a full hearing on October 2, 2019, and carefully listening to Ms. Hood's testimony and reviewing all the evidence (which LINA has in its possession at the date of filing this Complaint), the ALJ concluded that since October 20, 2017 (her alleged date of disability), Ms. Hood has been disabled and unable to work in any gainful occupation that may exist within the national economy as federal law defines the term.

48.     As a result of the ALJ's decision, Ms. Hood's claim for Social Security disability benefits was approved.  Ms. Hood is currently receiving Social Security disability benefits and SSA has consistently found she is entitled to those benefits since October 20, 2017.

49.     On December 12, 2019, Ms. Hood informed LINA that her claim for Social Security disability benefits was approved and she submitted a complete copy of the October 8, 2019 ALJ's Social Security "Notice of Decision – Fully Favorable."

50.     On June 12, 2020, as part of her appeal and in support of her Life Insurance Waiver of Premium claim, Ms. Hood reminded LINA that her Social Security disability claim was approved following a hearing before an ALJ and pursuant to federal law and LINA's own Regulatory Settlement Agreement (*See* Exhibit "C"), in order to afford LINA the opportunity to review *all of Ms. Hood's evidence that SSA considered in her claim*, she again submitted to LINA the SSA ALJ's October 8, 2019 Social Security "Notice of Decision – Fully Favorable," and a complete copy of her Social Security disability claim file from SSA's Office of Disability Adjudication and Review.

51.     SSA's approval of Ms. Hood's disability claim is highly relevant and probative evidence for this Court to consider with regard to the unreasonableness and unlawfulness of LINA's termination of her claim and its violation of ERISA's regulations in failing to render a decision in her claim following her appeal of the termination of her claim.

52.     LINA's failure to reinstate Ms. Hood's life insurance coverage and Life Insurance Waiver of Premium benefit following her appeal, and its failure to render a timely,

or any decision in her claim more than three (3) months after it began its review including the SSA ALJ's decision and SSA claim file, is evidence of its unlawfulness and unreasonableness that LINA did not act as her ERISA fiduciary and did not afford Ms. Hood a "full and fair" review as required by ERISA.

53.     LINA's failure to reinstate Ms. Hood's life insurance coverage and Life Insurance Waiver of Premium benefit following her appeal, and failure to render a timely, or any valid decision in her claim when LINA has a duty to act as her ERISA fiduciary, and a duty to give significant weight to the SSA ALJ's decision, violates ERISA and the terms of its own RSA.

54.     The SSA ALJ's approval of Ms. Hood's SSA claim is highly probative and relevant evidence of Ms. Hood's disability because the SSA ALJ is an independent, unconflicted fact finder and decisionmaker. The SSA ALJ's approval of Ms. Hood's claim after hearing her live testimony and reviewing her evidence which is essentially the same evidence LINA has in its possession, is evidence of the decision that an unconflicted and impartial decisionmaker "would have or should have" made in Ms. Hood's Life Insurance Waiver of Premium claim.

55.     The SSA ALJ's approval of Ms. Hood's SSA claim is highly probative and relevant evidence of Ms. Hood's disability because SSA's definition of disability is similar, if not identical, to the "any occupation" definition of disability Ms. Hood must meet, as set forth in LINA's Policy.

56.     LINA's failure to review and approve Ms. Hood's claim in the required ERISA timeframe following its receipt and review of the ALJ's favorable decision is clear evidence that LINA did not act as Ms. Hood's ERISA fiduciary and that it did not administer her claim _**solely**_ in her best interests and it did not provide her with a "full and fair" review as required by ERISA.

57.    LINA has a long history, pattern and practice of engaging in conflicted, self-dealing, self-interested and parsimonious claims handling and rendering decisions which favor LINA as documented in this claim as well as the Regulatory Settlement Agreement ("RSA") that it entered into with essentially every State, including the Arizona Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "C" to this Complaint).

58.    On June 12, 2020, Ms. Hood reminded LINA of the RSA and its legal obligations in administering Ms. Hood's claim pursuant to the RSA by submitting a copy of the agreement to LINA during its review of her Life Insurance Waiver of Premium claim.

59.    The terms of the RSA require LINA to consider the approval of Ms. Hood's SSA disability claim as well as the evidence in Ms. Hood's SSA disability claim file.

60.    The RSA resulted from a multistate examination of LINA's disability claims practices which led to many regulatory concerns and a corrective action plan that LINA agreed to which included regulatory monitoring of LINA by governmental agencies in its evaluation of its disability and other claims such as Ms. Hood's claim.

61.    The terms of the RSA, and the claims administration responsibilities LINA agreed to comply with in the RSA apply to Ms. Hood's Life Insurance Waiver of Premium claim and are relevant as it relates to whether LINA complied with the RSA's terms in its review of Ms. Hood's claim.

62.    As part of the terms of the RSA, LINA agreed to pay $925,000 in fines to the participating state regulatory agencies.

63.    As part of terms of the RSA, LINA agreed to collectively pay 5 different state's regulatory agencies hundreds of thousands of dollars for ongoing claims monitoring.

64.    Ms. Hood alleges LINA's review of her Life Insurance Waiver of Premium claim not only failed to comply with ERISA's regulations, but also failed to comply with the terms of the RSA.  LINA's review violated the terms of the RSA and its review precluded a "full and fair review" pursuant to ERISA.

65.     Regardless of the standard of review, Ms. Hood is entitled to engage in discovery with regard to LINA's compliance with the terms of the RSA during its review and its decision making in Ms. Hood's claim, as well as its compliance with the RSA.

66.     All of the reliable evidence Ms. Hood submitted to LINA consistently and conclusively proves she is unable to work in *any occupation* and that she has consistently met and continues to meet the "any occupation" definition of disability set forth in LINA's Policy.

67.     In three (3) separate letters dated June 12, 2020, May 26, 2021 and September 17, 2021, Ms. Hood requested for LINA to engage her in a "meaningful dialogue" as required by the Ninth Circuit so she could cure any alleged deficiencies that LINA believed existed, and also so she could perfect her claim as required by *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 972 (9th Cir. 2011) and *Montour v. Hartford Life & Accident Inc. Co.,* 588 F.3d 623 (9th Cir. 2009).

68.     LINA failed to engage in a good faith exchange during its review of Ms. Hood's Life Insurance Waiver of Premium claim.

69.     In a letter dated July 14, 2021 (*See* Exhibit "D"), LINA confirmed its receipt of Ms. Hood's June 12, 2020 appeal and that "your client's complete file, including any additional information submitted, will be considered during the appeal review process."

70.     In a separate letter also dated July 14, 2021 (*See* Exhibit "D"), LINA confirmed, "your client's [Life Insurance Waiver of Premium] claim continues to be under review" and states it would contact Ms. Hood's counsel's office "within 30 days."

71.     As part of its review of Ms. Hood's claim for the Life Insurance Waiver of Premium benefit, LINA obtained a medical records only "paper review" from a medical professional of its choosing, named Dr. Liarski.

72.     In a letter dated August 2, 2021, LINA provided Ms. Hood with written questions from its consulting physician, Dr. Liarski, to give to the rheumatologist who

evaluated Ms. Hood and authored the July 16, 2020 Independent Medical Examination report and April 21, 2021 medical update summary.

73.     In letters dated June 12, 2020, June 26, 2020 and June 3, 2021, Ms. Hood requested for LINA to provide her with any medical record review reports authored by any medical professional who reviewed her claim for LINA during its review so she and her medical professionals could respond as was necessary so she could perfect her claim. Although obligated to do so pursuant to ERISA and Ninth Circuit law, LINA never provided Ms. Hood with its reviewers' reports, including the report authored by Dr. Liarski.

74.     Ms. Hood alleges that in her claim, as well as in other disability claims he/she reviews, Dr. Liarski operated under a conflict of interest due to the fact he/she is a long-time medical consultant for LINA and/or for the disability insurance industry. As a result of this longtime relationship with LINA and the disability insurance industry Plaintiff alleges he/she is biased and not impartial as it relates to the review of her claim.

75.     Due to his/her long-time relationship with LINA and the disability insurance industry, Dr. Liarski operated under a conflict of interest and may have had incentives to protect his/her own consulting relationship with LINA and the disability insurance industry by providing a biased medical records only "paper review," which selectively reviews and ignores evidence, the type of one sided review which occurred in Ms. Hood's claim.

76.     Dr. Liarski's conflict of interest and bias led him/her to render biased, unreasonable and implausible opinions in Ms. Hood's claim which were favorable to LINA, and which unlawfully supported LINA's untimely claim determination/approval of Ms. Hood's claim based on his/her flawed opinions and reports.

77.     In *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003), the Supreme Court warned about biased, conflicted insurance company retained doctors, such as Dr. Liarski, who are repeatedly retained by disability insurance companies and/or third-party vendors to review disability claims by noting, "Nor do we question the Court of

-13-

Appeals' concern that physicians retained by benefits plans may have an 'incentive to make a finding of not disabled' in order to save their employers money and to preserve their own consulting arrangements."

78.     In a five (5) page letter dated August 18, 2021 (*See* Exhibit "D") Ms. Hood responded to LINA's August 2, 2021 letter and Dr. Liarski's questions, detailing the numerous reasons Ms. Hood is unable to work in any occupation and the medical professionals' opinions that support that conclusion.

79.     In her August 18, 2021 letter, Ms. Hood informed LINA that it should immediately approve her Life Insurance Waiver of Premium claim "…particularly in light of the recent approval of her LTD claim [on July 19, 2021]. For [LINA] to deny Ms. Hood's waiver of premium claim would be a total abdication of its fiduciary duty to administer her claim 'solely in [her] best interests' as required by ERISA and federal law."

80.     As referenced *supra,* Ms. Hood asserts that LINA's July 19, 2021 approval of her long-term disability appeal and reinstatement of her long-term disability benefits is relevant evidence for this Court to consider with regard to whether she is unable to work in any occupation as well as the unreasonableness of LINA's termination of her Life Insurance Waiver of Premium benefit.

81.     On September 9, 2021, ***fifty-seven (57) days*** after the date LINA confirmed Ms. Hood's claim was being reviewed, in a mostly boiler-plate, system generated letter (*See* Exhibit "D") and without engaging Ms. Hood in any meaningful dialogue, LINA stated, "…we require an extension of up to 45 days to make a decision on your client's pending Waiver of Premium claim appeal…we require this extension because of the following circumstances…we have received your 8/18/2021 letter with supplemental documentation for appeal consideration. This information is currently under review." LINA further confirmed in its letter that, "we expect to make our appeal decision within 45 days and will provide you with a status update within 30 days."

82.    On September 17, 2021 (*See* Exhibit "D"), Ms. Hood advised LINA that it was beyond its ERISA timeframe for rendering a determination in her claim (appeal) and requested for LINA to render a decision in her Life Insurance Waiver of Premium claim by October 1, 2021.

83.    On September 24, 2021 (*See* Exhibit "D"), in another generally boiler-plate, system generated letter, without engaging Ms. Hood in any meaningful dialogue and without notification, communication and/or an explanation that any valid "special circumstances" existed such that it required additional time to complete its review for reasons beyond its control, LINA informed Plaintiff that, "your client's claim is currently under review. We will continue with our review of your client's claim and make our appeal determination as soon as possible…we will contact you again within 30 days."

84.    As of the date of filing this Complaint, it has been ***ninety (90) days*** since LINA confirmed it was reviewing Ms. Hood's Life Insurance Waiver of Premium claim on July 14, 2021, and LINA has not rendered a decision in Ms. Hood's claim, without a reasonable or any explanation.

85.    Throughout its review of Ms. Hood's claim, pursuant to federal law, LINA failed to prove that a "special circumstance" existed under ERISA, which would have allowed it additional time to complete its review and render a decision.

86.    LINA's failure to provide any "special circumstances" under federal law that allow it to obtain additional time beyond the initial 45-day timeframe to render a decision clearly violates ERISA. *See* 29 C.F.R. § 2560.503-1(i)(1)(i), and *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 449-50 (S.D.N.Y 2017)(The only rationale for the extension provided in the company's written notice was that Prudential needed additional time "to allow for review of the information in Ms. Salisbury's file which remains under physician and vocational review." But virtually every appeal of the denial of a disability

benefits claim will require "physician and vocational review," and thus this cannot constitute a valid "special circumstance").

87.    Due to LINA's failure to render a decision the Court can defer to, and LINA's failure to provide Ms. Hood with a reasonable claims process as required by ERISA, with the filing of this Complaint, Ms. Hood deems her claim to be exhausted pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

88.    Consequently, the standard of review for this Court to apply is *de novo* because at the time Ms. Hood filed this Complaint, due to LINA's failure to provide Ms. Hood with a reasonable claims process by failing to make any decision the Court can defer to in her appeal, Ms. Hood has exhausted now all of her administrative remedies and she is permitted to file this civil action. [1]

89.    Pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i), due to LINA's failure to provide a reasonable claims process due to its failure to render a decision the Court can defer to in her appeal, Ms. Hood is entitled to bring this civil action pursuant to ERISA.

---

[1] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006) held, "In general, we review de novo a claim for benefits when an administrator fails to exercise discretion. *See Jebian*, 349 F.3d at 1106 (holding that an administrator failed to exercise its discretion when it did not make a benefits decision within the 60 days specified by the terms of the plan and the applicable regulation, so that the ultimate decision rendered was "undeserving of deference"). Other circuits have also held that review is de novo when the plan administrator fails to exercise discretion. *See Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005)(holding that a "deemed denied" claim, in which the administrator did not issue a decision within the time required by the regulations, constituted "inaction," which was not an exercise of discretion and which therefore was entitled to no deference; de novo review applied); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003) (noting that "[d]eference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision"); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) ("Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion . . . ."). *See Fessenden v. Reliance Standard Life Ins. Co.,* 927 F.3d 998 (7th Cir. June 25, 2019).

-16-

90.     Pursuant to ERISA, LINA owes Ms. Hood a fiduciary duty to administer her claim ***solely*** in her best interests. LINA's ERISA violations in failing to render a decision the Court can defer to in her claim, and failure to act as her fiduciary as referenced herein are in part, the reasons why she filed this Complaint.

91.     Before the filing of this Complaint, LINA had not shared with Ms. Hood any of the medical records only "paper review(s)" in her claim so she could respond to the report(s) and perfect her claim as allowed and required by Ninth Circuit law.

92.     LINA's failure to provide Ms. Hood with the opportunity to respond to any medical records only "paper review(s)" is an ERISA procedural violation which precluded a full and fair review pursuant to ERISA and this action violates Ninth Circuit law.

93.     Prior to filing this Complaint, LINA did not make a decision in Ms. Hood's appeal, even though the mandatory timeframe for rendering a decision in her claim ***expired on August 28, 2021*** (45 days from the date LINA confirmed receipt of Ms. Hood's appeal of its December 28, 2019 termination of her Life Insurance Waiver of Premium claim/benefits).

94.     The evidence submitted by Ms. Hood to LINA on her appeal clearly proves that she continues to meet any definition of disability in LINA's Policy, that her medical conditions have not improved in any manner which would allow her to return to work in any occupation and that she meets the definition of disability in LINA's Policy and is entitled to benefits. Consequently, Ms. Hood's claim and benefits should be reinstated.

95.     LINA's failure to make any decision the Court can defer to in Ms. Hood's appeal violates the terms of its own Policy which required LINA to render a decision within forty-five (45) days of the date it begins its review (the Policy is attached as Exhibit "A" to this Complaint).

96.     As a result of not making a decision within the timeframe required by LINA's Policy, LINA's review failed to comply with the terms of its own Policy and ERISA's regulations.

97.     LINA also had a duty pursuant to ERISA to engage Ms. Hood in a good faith dialogue to allow her to participate in LINA's review process so she had an opportunity to cure any deficiencies LINA believed existed in her claim.  LINA failed to engage Ms. Hood in this dialogue.

98.     During its review of her appeal, LINA either negligently, or intentionally committed numerous ERISA procedural violations as identified herein, even though ERISA's regulations were enacted to protect employee/beneficiary's rights such as Ms. Hood's.

99.     LINA's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Ms. Hood's reliable evidence which proved she met and continues to meet the definition of disability in the Policy and allowed LINA to render a timely approval of her claim.

100.     Had LINA considered and properly credited all of Ms. Hood's overwhelmingly supportive medical and other evidence, it would have timely approved her Life Insurance Waiver of Premium claim.

101.     In evaluating Ms. Hood's claim on appeal, LINA owed her an ERISA fiduciary duty and had an obligation pursuant to ERISA to administer her claim, "solely in [her] best interests..."

102.     LINA's conflict of interest as the decision-maker and provider/payor of life insurance benefits precluded it from administering Ms. Hood's claim in her best interests. [2]

103.     Due to its aforementioned conflicts of interest, LINA administered Ms. Hood's claim solely in *LINA's best interests* and not in Ms. Hood's best interests.

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

104.    In addition to failing to make any decision the Court can defer to pursuant to ERISA, LINA failed to adequately investigate the claim, and failed to engage Ms. Hood in a dialogue during the appeal of her claim regarding what evidence was necessary to allow her to perfect her claim/appeal so that it could be approved.

105.    LINA's failure to render a timely decision the Court can defer to pursuant to ERISA and failure to properly or fairly investigate the claim and to engage Ms. Hood in a dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies so Ms. Hood's claim could be approved is particularly egregious given the nature and severity of Ms. Hood's disabling medical conditions.

106.    LINA's failure to make any decision the Court can defer to pursuant to ERISA, and failure to engage Ms. Hood in a dialogue during its review of her claim is evidence that LINA's conflicted and biased review was motivated by its financial conflict of interest as referenced herein.

107.    Ms. Hood alleges that LINA's review was neither full nor fair because it violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and the terms of the RSA, for many reasons including, but not limited to: failing to make any decision the Court can defer to pursuant to ERISA's regulations in Ms. Hood's claim; failing to credit Ms. Hood's credible, reliable evidence including not giving significant, or any weight to the SSA ALJ's approval of Ms. Hood's SSA claim and the ALJ's rationale for why they approved the SSA claim; by failing to retain a truly independent third party vendor to obtain medical records reviews in Ms. Hood's claim; by failing to have Ms. Hood's claim reviewed by truly independent medical professionals; by abdicating and outsourcing its ERISA fiduciary duty and retaining biased companies and medical professionals to be involved in the review of Ms. Hood's claim; by failing to fully, properly, fairly and adequately investigate Ms. Hood's claim; by failing to request for Ms. Hood to attend an Independent Medical Examination or a Functional Capacity Evaluation when the Policy allowed for one and Ms. Hood's disabling medical conditions and her subjective complaints, and work limitations could not be adequately

understood by reviewing only her medical records (this raises legitimate questions about the thoroughness and accuracy of LINA's review and its termination); by providing biased and one sided reviews of Ms. Hood's claim that failed to consider all the evidence submitted by her; by de-emphasizing medical and other evidence which supported Ms. Hood's claim and its approval; by disregarding and/or failing to consider Ms. Hood's disabling subjective and self-reported complaints/symptoms/limitations; by failing to consider the combined effect that all of her medical conditions and resulting limitations documented in her medical and vocational evidence had on her ability to work in any occupation; and by failing to engage Ms. Hood in a dialogue so she and her treating and/or evaluating medical professionals could respond to LINA's reviewing medical professional's report by submitting the necessary evidence to perfect her claim so she could prove she is disabled from working as that term is defined in the Policy.

108.    Ms. Hood alleges a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested as a result of the dual roles LINA undertook as the decision maker and the provide/payor of benefits in her claim.

109.    LINA's conflict of interest provided it with a financial incentive to terminate Ms. Hood's Life Insurance Waiver of Premium claim, because every dollar it saved in not continuing to waive premiums on Ms. Hood's life insurance and not having to pay a potential life insurance claim, now represents profit for LINA.

110.    LINA's actions are similar to the conflicted and unlawful review LINA previously provided where the Ninth Circuit criticized it by stating, "The plan with a conflict of interests also has a financial incentive to cheat." *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 970 (9th Cir. 2011).

111.    LINA's financial conflict of interest manifested when it initially terminated Ms. Hood's claim and then it failed to render any determination in her claim.  In searching

for reasons to deny Ms. Hood's claim rather than approving it, LINA saved a *significant amount of money* in unpaid benefits to her.

112.    Regardless of the standard of review, Ms. Hood is entitled to discovery regarding LINA's aforementioned conflicts of interest, its bias and business relationships referenced herein, as well as the conflicts of interest of any third party vendor retained by LINA and of any medical professional (including but not limited to Dr. Liarski) retained or identified by LINA and/or LINA's third party vendor to review Ms. Hood's claim, and of *any* individual, medical professional or otherwise who reviewed any evidence and/or participated in the review of her claim.

113.    Regardless of the standard of review, the Court should allow discovery so it may properly weigh and consider the nature, extent and effect that *any* conflict of interest and/or any ERISA procedural violation had in influencing LINA's initial decision to terminate Ms. Hood's Life Insurance Waiver of Premium claim, as well as its failure to render any decision in the appeal of the termination of her claim.

114.    Ms. Hood asserts that any third-party vendor retained by LINA, and in turn, any medical professional that vendor hired to review evidence in Ms. Hood's claim operated under a conflict of interest due to their business relationship with LINA and their relationship with the disability insurance industry in general.

115.    LINA's reviewing medical professional's (Dr. Liarski) conflict of interest as referenced herein, tainted his/her opinions which resulted in his/her biased, adverse opinions against Ms. Hood which did not allow LINA to approve/reinstate her claim.

116.    With regard to whether Ms. Hood meets any definition of disability set forth in the relevant Policy and/or Plan, the standard of review for the Court to apply is *de novo*, because at the time Ms. Hood filed this Complaint, due to LINA's failure to provide Ms. Hood with a reasonable claims process due to its failure to render a decision this Court can defer to, Ms. Hood deems her claim exhausted pursuant to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

117.    The standard of review is *de novo* because even if the Court concludes the Policy confers discretion, due to LINA's failure to provide a reasonable claims process and failure to render a timely decision as required by ERISA, there is no decision from LINA for the Court to defer to in Ms. Hood's claim/appeal. *See Fessenden v. Reliance Standard Life Ins. Co.,* 927 F.3d 998 (7th Cir. June 25, 2019).

118.    The standard of review for the Court to apply is *de novo.*

119.    Ms. Hood alleges that LINA failed to provide a "full and fair" review as required by ERISA, and that its termination of her Life Insurance Waiver of Premium benefits beyond April 19, 2020 is *de novo* wrong decision because her evidence proves that she did meet and continues to meet any definition of disability set forth in the Policy.

120.    In the event the court finds the Policy lawfully confers discretion, Ms. Hood asserts the standard of review should be *de novo* because LINA did not provide a "full and fair" review as required by ERISA, and its ERISA violations are so flagrant egregious that they justify a *de novo* standard of review under Ninth Circuit law

121.    Regardless of the standard of review, Ms. Hood is entitled to discovery regarding LINA's conflicts of interest/bias, the conflicts of interest/bias of any third-party vendors LINA may have retained and the conflicts of interest/bias of any individual who were involved in the review of Ms. Hood's claim and who may have influenced and led to LINA's failure to provide a reasonable claims process and to make a decision in Ms. Hood's claim.

122.    Regardless of the standard of review, Ms. Hood is entitled to discovery regarding LINA's compliance with the terms of its Policy and the RSA, as well as the numerous ERISA procedural violations committed by LINA during its review of Ms. Hood's appeal and her claim.

123.    As a direct result of LINA's decision to terminate Ms. Hood's Life Insurance Waiver of Premium benefit, as well as its failure to make  any decision this Court can defer to in her appeal, she has been substantially injured and suffered damages in the form of lost Life Insurance Waiver of Premium benefits and continued life insurance coverage for herself

and her family/dependents, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, as well as from any other Company Plan and/or the Company as a result of being found disabled in this matter.

124.     Upon information and belief, Ms. Hood alleges other potential non-disability employee benefits may include, but are not limited to, health insurance benefits/coverage, other insurance related coverage/benefits, retirement benefits and/or a pension.

125.     Ms. Hood seeks any and all employee benefits she is due and owed in this lawsuit, including but not limited to the reinstatement of the life insurance coverage Ms. Hood had for herself and her family/dependents before LINA erroneously terminated her claim. Ms. Hood also seeks the waiver of any premiums that may be due on the aforementioned life insurance coverage, and any other benefit she may be entitled to and due from Defendant as a result of being found disabled in this matter.

126.     Ms. Hood does not seek long-term disability benefits from LINA in this action as her long-term disability claim has been approved and those benefits are currently being paid by LINA.

127.     Pursuant to 29 U.S.C. § 1132, Ms. Hood is entitled to the reinstatement of her life insurance coverage for herself and her family/dependents and the reinstatement of her Life Insurance Waiver of Premium benefit, as well as any other non-disability employee benefits she may be entitled to, including prejudgment interest, reasonable attorney's fees and costs from Defendant.

128.     Ms. Hood is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendant's termination and nonpayment of benefits.

WHEREFORE, Ms. Hood prays for judgment as follows:

A.     For an Order finding the evidence in Ms. Hood's claim is sufficient to prove that she met and continues to meet the definition of disability set forth in the relevant Plan

and/or Policy, and that she is entitled to Life Insurance Waiver of Premium benefits, and any other employee benefits she is entitled to as a result of that Order, from the date LINA terminated her benefits, through the date of judgment with prejudgment interest thereon;

B.      For an Order directing Defendants to continue providing Ms. Hood the aforementioned life insurance and employee benefits and waiving any premiums that may be due on her life insurance until such a time as she meets the conditions for the termination of benefits;

C.      In the event the Court is unable to render a decision as to whether Ms. Hood is entitled to Life Insurance Waiver of Premium benefits from LINA for any reason, she seeks an Order remanding her claim and this case to LINA so it can review the claim again and render a determination consistent with the Order issued by the Court;

D.      For an Order awarding Ms. Hood her attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E.      For such other and further relief, equitable and otherwise, as the Court deems just, proper, and appropriate.

DATED this 12th day of October, 2021.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff